IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES SCOTT THOMAS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action No. 07-40J |
| | ) | Judge Kim R. Gibson/ |
| PENNSYLVANIA DEPARTMENT OF | ) | Magistrate Judge Amy Reynolds Hay |
| CORRECTIONS; CUTSHALL; OFFICER | ) | |
| EVERHART; GREENLEAF; OFFICER | ) | |
| HARPSTER; SUPERINTENDENT | ) | |
| GEORGE PATRICK; REGIONAL | ) | |
| DEPUTY SECRETARY WILLIAM | ) | |
| STICKMAN; YOUNKIN; JOHN DOES, | ) | |
| in their individual and official capacities, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Re: Dkt. [15] |

## REPORT AND RECOMMENDATION

### RECOMMENDATION

It is recommended that the Defendants' motion to dismiss, Dkt. [15], be denied.

### REPORT

Charles Scott Thomas ("Plaintiff") is an above-the-knee amputee, and a prisoner in the Pennsylvania Department of Corrections ("DOC"). He has filed a civil rights suit, claiming that the Defendants violated his rights under the Eighth Amendment, the Americans With Disabilities Act ("ADA"), the Rehabilitation Act and state law. This suit arises in connection with the denial of a cell that is adapted for persons with disabilities, sometimes referred to as a "handicapped cell" (hereinafter "an adaptive cell"), and the loss by DOC of his prosthetic leg, which had been sent out for repairs, and the replacement thereof with an allegedly inferior prosthetic leg. The complaint named as defendants several individuals who were employees of DOC, as well as DOC itself, in addition to naming an independent contractor.

The DOC employees as well as DOC (collectively "the Moving Defendants") have filed a motion to dismiss.

**Relevant Procedural History**

Having paid the filing fee, and proceeding with counsel from the Community Justice Project, Plaintiff filed the instant civil rights complaint. At the time of the filing of the complaint, Plaintiff was housed in SCI-Houtzdale. The complaint named the following as defendants: DOC; Jerry L. Everhart, Plaintiff's Unit Manager; Craig Harpster, another of Plaintiff's Unit Managers; Norene Greenleaf, the Corrections Health Care Administrator at SCI-Houtzdale; George Patrick, the Superintendent of SCI-Houtzdale; William Stickman, the Regional Deputy Secretary for the Western Region; and Debra Younkin, the Acting Corrections Health Care Administrator at SCI-Houtzdale, all of whom are represented by the Pennsylvania Attorney General's office. In addition, the complaint named Deb Cutshall, who was program manager employed by Prison Health Services, which was the private independent contractor hired to provide medical services. Ms. Cutshall is represented by counsel other than the Attorney General's office. Last, the complaint also named John Doe defendants who were alleged to have been responsible for transporting Plaintiff's lost prosthetic leg back from the repair center.

All those parties represented by the Attorney General's office (collectively, "the Moving Defendants") filed a partial motion to dismiss, Dkt. [15], pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff filed a response. Dkt. [23].

**Standard of Review**

As the United States Supreme Court recently held in <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007), a complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974

(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Under this standard, the court must accept as true all factual allegations of the complaint and all reasonable inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 127 S. Ct. at 1965 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

The question to be resolved is: whether, taking the factual allegations and all reasonable inferences to be drawn therefrom, are the "factual allegations . . . enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]" Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-1965 (2007). Or put another way, a complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

In addition, because Plaintiff is a prisoner who has brought an action with respect to prison conditions, the screening provisions of 42 U.S.C. § 1997e(c) apply. Furthermore, because Plaintiff is a prisoner who is seeking redress from a governmental entity or employee thereof, the screening provisions of 28 U.S.C. § 1915A apply. Pursuant to these screening provisions, a court is obliged to sua sponte dismiss complaints that are frivolous, malicious or that fail to state a claim upon which relief can be granted. The court's obligation to dismiss a complaint under the PLRA screening provisions is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was

not relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez.[1]

**The Factual Allegations of the Complaint**

The complaint alleges the following. Plaintiff was transferred from the Allegheny County Jail to SCI-Camp Hill around May 2004 and remained there until August 23, 2004, when he was transferred to SCI-Houtzdale, where he is currently housed. The Allegheny County Jail had taken custody of Plaintiff's prosthetic leg. When Plaintiff was transferred to SCI-Camp Hill, staff there informed him that they had custody of the prosthetic leg but that it was in need of repair and SCI-Camp Hill would arrange for repair. The prosthetic leg was a "high end" leg made out of carbon, with an S and S hydraulic joint and a vacuum socket. In August 2004, Plaintiff was transferred to SCI-Houtzdale. Upon arrival, Plaintiff requested an adaptive cell and also inquired about his prosthetic leg and was told he would be receiving it soon. Without the prosthetic leg, Plaintiff had many difficulties, including walking, urinating, exercising and maintaining personal hygiene.

After making several inquiries, Plaintiff was finally told in September 2004 that his prosthetic leg was unable to be repaired and that he would be getting a new one. On September 29, 2004, information was transmitted to SCI-Houtzdale explaining that the prosthetic leg was not repaired because the estimate was very expensive. Instead, a Dr. Edelman requested estimates for the leg to be replaced. At some point all information about the prosthetic leg and the prosthetic leg itself was lost.

On October 25, 2004, Plaintiff was fitted for a new prosthetic leg. Plaintiff told the medical staff about the type of the prosthetic leg that was lost. Plaintiff was assured by DOC

---

[1] Although the court is aware of its continuing obligation under the PLRA, it has not found a ground, which the Moving Defendants have not raised, upon which to rest a recommendation to dismiss.

staff that he would be receiving an identical new prosthetic leg. In the meantime, Plaintiff was given crutches. From around September 7, 2004 until November 2004, Plaintiff was placed in an adaptive cell when on November 4, 2004, Plaintiff was placed in a regular cell. Subsequently, in November 2004, Plaintiff submitted an inmate request about his prosthetic leg and also requested an adaptive cell. On December 20, 2004, a Physician's Assistant ordered an adaptive cell for Plaintiff from December 20, 2004 to June 20, 2005, but later that same day, the order was revoked apparently by Defendant Harpster, Plaintiff's Unit Manager.

On January 28, 2005, Plaintiff submitted an inmate request for an adaptive cell because Plaintiff was worried about his vulnerability to attack due to his disability. In addition, given his physical challenge and special needs stemming therefrom, tensions were created between Plaintiff and his cell mates.

In February 2005, Plaintiff received a new prosthetic leg, which had a slip socket and belt system rather than an S and S hydraulic joint with a locking lever and a vacuum socket. Despite the differences between Plaintiff's original lost prosthetic leg and the new one, which Plaintiff believed made the new one far inferior to the original one, Plaintiff tried the new prosthetic leg. He found the new prosthetic leg painful in that it irritated his scar tissue on his waist and it caused him blisters. Because the substitute leg was not equivalent to the lost prosthetic leg, and because it caused Plaintiff pain, Plaintiff refused the new prosthetic leg.

After refusing the new but inferior, in Plaintiff's judgment, prosthetic leg, Plaintiff submitted numerous requests for an adaptive cell to Defendants Everhart, Younkin and Greenleaf, who repeatedly denied those requests. Most, if not all, of the Defendants were aware of Plaintiff's requests.

On October 14, 2005, Plaintiff requested of the medical department at SCI-Houtzdale an adaptive cell. He was told that Defendant Younkin's denial of Plaintiff's request for an adaptive cell cannot be overridden by a doctor.

Because of the failure to provide Plaintiff with an adaptive cell and/or a prosthetic device that was equivalent to the original one which was lost by DOC, Plaintiff was more vulnerable to an attack by other inmates. On December 19, 2005, Plaintiff was physically attacked by a cell mate. Plaintiff alleges that the Defendants knew that their denial of an adaptive cell to Plaintiff placed him at a greater risk of assault especially since other individuals with disabilities who were not placed in adaptive cells had been attacked.

On June 7, 2006, Plaintiff fell in his non-adaptive cell, injuring his back. On January 16, 2007, a team meeting was held to discuss Plaintiff's need for an adaptive cell. Defendants Everhart, Younkin and Cutshall were present at this meeting. The notes of this meeting indicate that Plaintiff has had problems getting along with cell mates in the past but that he has signed a cell agreement with another inmate whereby they agree to be cellmates, albeit, apparently in a non-adaptive cell. At this time Plaintiff was still refusing the new prosthetic leg. However, because of the existence of the recent cell agreement, Plaintiff's request for an adaptive cell was again denied at this meeting.

Apparently, Plaintiff was using crutches in order to get around. However, because he had to go outside to attend meals, and because of inclement weather in the winter and the potential for the crutches to slip in snow, Plaintiff was given a wheelchair to use in inclement weather outside his cell. This occurred after Plaintiff was required to rely on the assistance of other inmates to nearly carry him to the cafeteria.

After the wheelchair was issued to Plaintiff for use outside of his cell, Defendant Everhart did not permit Plaintiff to use crutches even in his cell. The allowance of a wheelchair only for purposes of inclement weather interfered with Plaintiff's ability to leave his cell, to move about within his cell and to go to the cafeteria.

Plaintiff alleges that some of the adverse actions recounted above were taken against him in retaliation and/or to coerce him in violation of the ADA and the Rehabilitation Act for his actions in invoking the ADA or the Rehabilitation Act.

The foregoing is alleged to state a cause of action under the Eighth Amendment, as well as under the ADA and the Rehabilitation Act and under state law for breach of bailment, conversion and negligent dispossession. By way of relief, Plaintiff seeks a declaratory judgment that Plaintiff's rights under federal law were violated, compensatory and punitive damages, attorney's fees, costs and any other relief that is warranted.

**Discussion**

The first ground raised by the Moving Defendants in their motion to dismiss is that Plaintiff cannot sue individuals under either the ADA or the Rehabilitation Act. Plaintiff responded by essentially conceding the correctness of the Moving Defendants' position at least with respect to claims brought under Title II of the ADA by filing a motion to withdraw all of his ADA claims and Rehabilitation Act claims against the individual defendants in their individual capacities, except for those ADA claims and Rehabilitation Act claims that claim retaliation and coercion under the ADA and Rehabilitation Act. Dkt. [24]. By separate order filed simultaneously with this report, the motion to withdraw is granted. Hence, to the extent that the Moving Defendants' motion to dismiss sought to have the individual capacity claims (other than the retaliation/coercion claims) against them dismissed, it will be denied as moot.

However, to the extent that the Moving Defendants' motion to dismiss sought to have the retaliation and/or coercion claims which were brought under the ADA and Rehabilitation Act dismissed, it will be denied because individual capacity suits under the provisions of the ADA and the Rehabilitation Act relating to retaliation/coercion claims are permitted. See, e.g., Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1186 (11th Cir. 2003)("the ADA's anti-retaliation provision permits personal capacity suits against individuals"); Stengle v. Office of Dispute Resolution, 479 F.Supp.2d 472 (M.D.Pa. 2007)(declining to dismiss individual capacity claims for retaliation under the Rehabilitation Act); Deptford Twp. Sch. Dist., 2005 WL 1400752, at *10-11 (D.N.J. June 15, 2005) (finding that "[i]t is evident from the language of the relevant regulation that individual actors can be liable for retaliation under § 504. 34 C.F.R. § 100.7 provides that no recipient 'or other person' may engage in retaliatory activity."). Contra Zied-Campbell v. Richman, 2007 WL 1031399 (M.D. Pa. March 30, 2007)("Unlike the ADA, the Rehabilitation Act does not have a separate section prohibiting retaliation. As indicated above, Section 504 of the Rehabilitation Act applies only to recipients of federal financial assistance and the plaintiff has not alleged that the defendants receive federal financial assistance. Accordingly, we conclude that the defendants may not be liable in their individual capacities for retaliation under the Rehabilitation Act.").[2] See also Weber v. Cranston School Committee, 212 F.3d 41, 48 (1st Cir. 2000)(noting that " The Rehabilitation Act was amended in 1978 to

---

[2] Moving Defendants did not file a reply to Plaintiff's response. They have not controverted that individuals may be liable in their individual capacity under the Rehabilitation Act for retaliation/coercion. Because we have not had the benefit of adversary argument on this issue, and because the Moving Defendants have not argued that there is no individual capacity liability for retaliation/coercion claims under the Rehabilitation Act, the Moving Defendants have not met their burden to show entitlement to dismissal of these individual capacity claims of retaliation/coercion under the Rehabilitation Act. See Stengle v. Office of Dispute Resolution, 479 F.Supp.2d at 477 ("we are reluctant to dismiss Count V as to Rhen at this early stage given the conflicting authority on the question of whether individuals can be held liable under the Rehabilitation Act.").

incorporate the 'remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.].' Id. § 794a(2). The anti-retaliation regulation adopted pursuant to Title VI of the Civil Rights Act provides as follows: 'No recipient **or other person** shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by Section 601 of [the Civil Rights] Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part.' 34 C.F.R. § 100.7(e). This regulation also applies to any right or privilege secured by the Rehabilitation Act. See id. § 104.61.")(emphasis added).

In addition, all of Plaintiff's claims against the individual Moving Defendants in their **official capacities** under the ADA and the Rehabilitation Act (and not just the retaliation/coercion claims) will also be permitted to go forward. See, e.g., Constantine v. Rectors and Visitors of George Mason University, 411 F.3d 474, 498 (4th Cir. 2005) (permitting official capacity suits under Rehabilitation Act); Miranda B. v. Kitzhaber, 328 F.3d 1181 (9th Cir. 2003)(permitting official capacity suits against individuals under the ADA and the Rehabilitation Act); Frederick L. v. Department of Public Welfare, 157 F.Supp.2d 509 (E.D.Pa. 2001)(permitting official capacity suits against individuals under the ADA). Hence, to the extent that the Moving Defendants sought dismissal of the claims against the individual defendants in their official capacities, the motion to dismiss should be denied.

Next, the Moving Defendants claim that the statute of limitations bars this action with respect to the Eighth Amendment claims of delay in replacing the lost prosthetic leg and claims of denial of an adaptive cell. Moving Defendants correctly point out that these claims are governed by a two year statute of limitations. Fitzgerald v. Larson, 769 F.2d 160, 162 (3d Cir.

9

1985) ("the two-year Pennsylvania limitation for personal injury actions of 42 Pa.Const.Stat.Ann. § 5524 governs all § 1983 actions brought in Pennsylvania."). Moving Defendants are further correct that a statute of limitations defense may be raised in a motion to dismiss when the defense is clear from the face of the complaint. Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002).

The statute of limitations requires that a complaint be filed between the time the cause of action accrues and the limitation period runs out. See Sprint Communications Co., L.P. v. F.C.C., 76 F.3d 1221, 1226 (D.C. Cir. 1996). The filing of the complaint generally stops the running of the statute of limitations. See, e.g., Hair v. U.S., 350 F.3d 1253, 1260 (Fed. Cir. 2003)("The basic rule is that the clock of a statute of limitations begins to run from the date the plaintiff's cause of action 'accrues' . . . . The clock stops on the date that the plaintiff files his complaint in a court of proper jurisdiction.").

The date for accrual of a federal statutory action (when the statute of limitations period begins to run) is a matter of federal law. Albright v. Oliver, 510 U.S. 266, 815 n.6 (1994) (Ginsburg, J. concurring); ("The question when the limitations period begins to run, however, is one of federal law. "); Keystone Ins. Co. v. Houghton, 863 F.2d. 1125, 1127 (3d Cir. 1988) ("[d]etermining when a federal cause of action accrues is a matter governed by federal common law."), *overruled on other grounds by*, Klehr v. A.O. Smith Corp., 521 U.S. 179 (1997). This is true even when the federal statute borrows a state statute of limitations. Baron v. Allied Artists Pictures Corp., 717 F.2d 105, 108-109 (3d Cir. 1983) (affirming district court's holding that "when state statutes of limitations are borrowed, federal standards determine the question of accrual"); see also Gluck v. Amicor, Inc., 487 F.Supp. 608, 613 (S.D.N.Y. 1980)("Having ascertained the length of the limitations period, the next task is to determine when the period began to run, a determination which is to be made under federal law."). A claim accrues when

the plaintiff knew or had reason to know of the injury.  Montgomery v. DeSimone, 159 F.3d 120, 126 (3d Cir. 1998);  Keystone Ins. Co. v. Houghton, 863 F.2d at 1127 (a federal cause of action accrues when the plaintiff is aware, or should be aware, of the existence of and source of injury, not when the potential claimant knows or should know that the injury constitutes a legal wrong).

Moving Defendants note that the filing of the complaint herein did not take place until February 23, 2007 and argue that any alleged wrongdoing that occurred prior to February 24, 2005 is time barred.

In response, Plaintiff essentially argues that it is not clear from the face of the complaint that the statute of limitations bars any portion of his Eighth Amendment claims because the "discovery rule," the "continuing wrong doctrine" and/or principles of equitable tolling may all have prevented this action from being time barred.

This Court agrees that in light of the factual allegations of the complaint, and the arguments made with respect to the discovery rule, the continuing wrong doctrine and the principles of equitable tolling, it is not clear from the face of the complaint that the statute of limitations has run as to some of Plaintiff's Eighth Amendment claims.  Accordingly, Moving Defendants' motion to dismiss based on the statute of limitations argument should be denied.

Lastly, the Moving Defendants argue that the complaint fails to sufficiently allege the personal involvement of some of the Moving Defendants.  Specifically, they argue that Plaintiff failed to allege the personal involvement of Everhart, Greenleaf, Patrick, Harpster, Stickman and Younkin.  Plaintiff responds that requiring him to plead more specific facts about the personal involvement in the alleged wrongdoing runs counter to the liberal notice pleading standard of Fed.R.Civ.P. 8.

The court is satisfied that the complaint meets the liberal pleading standards of Rule 8 such that it has plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. at 1974. The facts plead in the complaint are sufficient to give the Defendants notice of Plaintiff's claims even if not sufficient at this stage to alert them to their precise individual role in his claims. The Twombly standard is met here because in light of the facts as plead in the complaint, and the nature of the claims, and the arguments made by Plaintiff in his response in opposition to the motion to dismiss, it is not clear how, without discovery or prior to discovery, Plaintiff could have plead anything more than he did with respect to the personal involvement of each of the Moving Defendants. See id. at 1966 ("the threshold requirement of Rule 8(a)(2) [is] that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'"). Here, the complaint possesses enough heft to show that Plaintiff is entitled to relief. It will be left to discovery and the summary judgment stage to determine whether the Moving Defendants had sufficient personal involvement in the alleged wrongdoing so as to justify retaining them in the suit.

CONCLUSION

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ *Amy Reynolds Hay*
United States Magistrate Judge

Dated: 3 December, 2007

cc:  The Honorable Kim R. Gibson
     United States District Judge

     All counsel of record by Notice of Electronic Filing